# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

## TAMPA DIVISION

MICHAEL J. POLELLE

      Plaintiff

      V.

      Defendants

CORD BYRD, solely in his official

capacity as Florida Secretary of State

and

                                  CASE NO.  8:22-CV-1301-SDM-AAS

RON TURNER, solely in his official

Capacity as Supervisor of Elections

for Sarasota County

_____

**PLAINTIFF'S RESPONSE TO THE AMENDED MOTION TO DISMISS BY DEFENDANT, CORD BYRD, FLORIDA SECRETARY OF STATE, AND THE MOTION TO DISMISS BY DEFENDANT RON TURNER,   SUPERVISOR OF ELECTIONS FOR SARASOTA COUNTY**

## I.  PLAINTIFF HAS STANDING TO ASSERT HIS CONSTITUTIONAL CLAIMS

In a case upholding the standing of physicians to challenge a law inhibiting their First Amendment right of free speech, the Eleventh Circuit confirmed that Article III of the Constitution requires the plaintiff to incur an injury-in-fact or be threatened with a concrete and particularized injury-in-fact that is fairly traceable to the alleged action of the defendant and is likely to be redressed by a favorable decision. *Wollschlaeger v. Governor, State of Florida,* 843 F.3d 1293, 1303-04 (11th Cir.2017).A. LOCAL

### A. TAXPAYER STANDING

As alleged in his First Claim for Relief in ¶¶ 12-16 of his Complaint (p.2), Plaintiff pays an annual ad valorem property tax into a General Fund of the Sarasota County Commission from which the Defendant, Ron Turner, withdraws funds to finance primary elections excluding Plaintiff solely because of his political decision to register as a voter with "No Party Affiliation." In 2020 Defendant, Ron Turner, spent $752, 307 to hold the Presidential Primary and $1,000,043.33 for other primaries from which Plaintiff was excluded because of his principled political choice to register without party affiliation. (allegation of ¶ 14 of First Claim for Relief in Complaint).

Although federal and state taxpayers generally lack standing in federal court to challenge federal or state expenditures, taxpayer standing does exist to sue municipal corporations for the illegal expenditure of local funds, as acknowledged in *Daimlerchrysler Corp. v. Cuno, 547 U.S. 332 (2006). "The Frothingham* Court noted with approval the standing of municipal residents to enjoin the 'illegal use of the money of a municipal corporation,' relying on 'the peculiar relation of the corporate taxpayer to the corporation' to distinguish such a case from the general person taxpayer suits." *Id.* at 349

In addition, Plaintiff urges taxpayer standing based on a First Amendment exception to the general rule disallowing standing for federal and state taxpayers who challenge illegal federal or state expenditures. The Court in *Flast v. Cohen*, 392 U.S. 83 (1968) allowed standing to  federal taxpayers challenging federal legislation financing the purchase of secular textbooks for religious school on the basis of the Establishment Clause and the Free Exercise Clause of the First Amendment. "Whether the Constitution contains other specific limitations on spending] can only be determined in the context of future cases." *Id.* at 105.

Plaintiffs submits that it would betray the reasoning of *Flast* to conclude that the singular importance of the First Amendment only applies in standing cases involving the Establishment Clause and Free Exercise Clause and not the Freedom of Speech Clause alleged by Plaintiff in his Complaint. Splitting First Amendment rights for purposes of standing or lack of standing is akin to King Solomon's shrewd proposal to split the baby

with a sword to determine the true mother who shrank in horror at the suggestion while the false mother urged the splitting.

## B. INJURY-IN-FACT

Defendants mischaracterize Plaintiff's injury-in-fact by claiming he has only a "desire" to vote in party primaries.  Plaintiff alleges in ¶ 9 of his Complaint (p.4) that "Defendants have prohibited him from voting in any party primary by enforcement of § 101.021, Fla. Stat. (2021) [section number mistyped as § 101.102 in filed copy of Complaint]." An actual arrest, prosecution, or other enforcement action is not required for Article III standing. Threatened or imminent enforcement of the law will suffice.  The court in *Wollschlaeger v. Governor, State of Florida*, 848 F.3d 1293, 1304 (11th Cir. 2017) stated clearly:

When an individual is subject to [the threatened enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Driehaus, 134 S.Ct. at 2342* (citing other Supreme Court cases as examples). A person "can] bring a pre-enforcement suit when he 'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution[.]' " *Id.* (citation omitted). *See also ACLU v. The Florida Bar, 999 F.2d 1486, 1494 & n.13 (11th Cir. 1993)* (explaining that a plaintiff must have an objectively reasonable belief about the likelihood of disciplinary action).

Although he is prepared to do, it would be an exercise in futility to require Plaintiff to attempt to crash a party primary election in Florida, such as the one scheduled for August 23, 2022. by refusing to change his voter affiliation from "No Party Affiliation" to affiliation with a political party and yet demanding to vote in that primary

at the risk of being ejected from the polling place or arrested. The law of standing does not require him to violate or attempt a violation of Florida's election law before challenging it in the courts.

In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (intent to engage in political speech sufficient for standing) the Supreme Court explained that where an individual is threatened with an enforcement action for asserting a right, an actual enforcement action against that individual is not required.  "A Plaintiff satisfies the injury-in-fact requirement by alleging an intention to engage in a course of conduct affected with a constitutional interest but proscribed by statute." *Id.* at. 159.  Defendant does not deny that Florida's "Closed Primary" provision in § 101.021, Fla. Stat. (2021) effectively prohibits the Plaintiff, who is registered to vote with "No Party Affiliation," from voting in any party primary so long as he holds fast to his political conviction of non-party affiliation.

The Defendant's assertion that there is no Injury-in-fact from the prohibition of §101.021 because Plaintiff can "simply" register as a member of a party 29 days before a primary election. This misses the central issue of Plaintiff's Complaint.  Plaintiff's sincere and determined conviction to remain politically unaffiliated with any party is at the heart of a fundamental right accorded every American to remain unaffiliated with any governmental effort to compel association with a political or religious belief. *West Virginia State Board of Educ. v. Barnette,* 319 U.S. 624, 642 ( 1943), ("If there is any fixed star in our constitutional constellation, it is that no official, high or mighty, can

proscribe what shall be orthodox in matters of politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.")

As a matter of constitutional right and conscience, Plaintiff cannot "simply" choose a party primary in which to vote. To argue Plaintiff can avoid the very issue he is trying to raise in court by merely voting in a party primary is equivalent to asking an atheist to swear membership in any organized religion of his or her choice, in order to vote in a government-operated and government-subsidized primary. But the Supreme Court has clearly ruled that government may not inhibit political belief and association through the coercive conditioning of core First Amendment rights on the threat of withholding some benefit in the form of employment or otherwise. *Elrod v. Burns, 427 U.S. 347 (1976).*

If Plaintiff were to lie about his mental state by "simply" changing his voter registration from "No Party Affiliation" to "Republican" or "Democrat," he would risk running afoul of Florida laws which criminally punish fraudulent registration. The Supervisor of Elections is authorized to investigate fraudulent registrations and illegal voting. §104.42, Fla. Stat. (2021). Furthermore, §104.011, Fla. Stat. (2021) makes it a third-class felony to willfully swear or affirm falsely by oath or affirmation in submitting voter registration information and §104.15, Fla. Stat. (2021) makes it a third-class felony for any person, who knows he is unqualified, to vote in any election.

The court in *Lacasa v. Townsley, 883 F. Supp. 2d 1231, 1235, 1238 (S.D. Fla. 2012*, cited by Defendant, admitted: "The present litigation presents a unique factual

scenario that certainly has not been considered by the Supreme Court." *Id* at 1235. Nonetheless, The *Lacasa* court relied on *California Democratic Party v. Jones*, 530 U.S. 567, n 5 (2000) to find a lack of standing , even though standing was not an issue before the Supreme Court in the *California Democratic Party* case. The *Lacasa* court appears to have conflated issues of standing with issues related to the merits.

In that short footnote 5, Justice Scalia was not discussing the issue of standing but the weak relationship, if any, between a party and all voters, including members of opposition parties as well as independent voters, are allowed to vote in a "blanket primary" to select the party's candidate for the general election. Footnote 5 did not even mention standing for good reason. The Democratic Party, not non-party voters desiring to vote in its primaries, had brought the case to successfully challenge California's "blanket primary" system as a violation of the party's right not to have non-party members decide its nominees for the general election. That scenario is not the case before this Court.

 Nowhere in his Complaint does Plaintiff   suggest the adoption of a "blanket primary" in which voters belonging to an opposing party are allowed to participate in another party's primary. If Florida's closed-primary system is declared unconstitutional, the Florida legislature is free to adopt other primary solutions left open by the Supreme Court that avoid the constitutional issues raised by Plaintiff in his Complaint and yet respect the constitutional rights of political parties.

## C. TRACEABILITY AND REDRESSABILITY

In his Amended Motion to Dismiss (p.3), Defendant Boyd's contention is that even if there were an injury-in-fact, any injury is not traceable to or redressable by the Florida Secretary State.  Plaintiff's Complaint alleges in ¶ 5 of his Complaint (pp.5-6), and Florida law confirms, that aside from other relevant duties as chief election officer of the state, the Florida Secretary of State must "provide written direction and opinions to the supervisors of election on the performance of their official duties with respect to the Florida Election Code or rules adopted by the Department of State." §97.012 (16), Fla. Stat. (2021). More than that, the Florida Secretary of State must bring and maintain lawsuits "to enforce the performance of any duties of a county supervisor of elections or any official performing duties with respect to chapters 97 through 102 and 205 or to enforce compliance with any rule of the Department of State adopted to interpret or implement any of these chapters." *§97.012 (14), Fla. Stat. (2021).*

As is axiomatic in tort law, there can be more than one cause that contributes to an injury. Where two defendants are jointly and severally responsible each cannot escape liability by saying that but for the actions of the other the harm would not have occurred. This principle is implied in the way *Loggerhead Turtle v. v. County Council of Volusia County*, 148 F.3d 1231 (11th Cir.1998) handled the issue of standing. Sea turtles had standing for a county's refusal to ban beach-driving and artificial lights despite the county's claim that the current regulations in four municipalities did not permit the regulation sought.

The court acknowledged that for standing purposes an injury cannot be the result of an independent third-party action but also said: "On the other hand, standing is not defeated merely because the alleged injury can be fairly traced to the actions of both parties and non-parties (citation omitted)." *Id* at 1247.  The failure to regulate in *Loggerhead Turtle* did not defeat the traceability and redressability required for standing any more than would the failure to regulate defeat standing as regards the Secretary of State. "We agree with the Turtles that they have shown a sufficient causal connection to seek to hold Volusia County liable for 'harmfully' inadequate regulation of artificial lighting in the municipalities of Daytona Beach, Dayton Beach Shores, Ormond Beach and New Smyrna Beach." *Id.*at1249.

*Jacobson v. Sec'y of State,* 974 F.3d 1236, 1242 (11th Cir. 2020), cited by Defendant Boyd in his Amended Motion to Dismiss (P.3), is distinguishable. Voters and organizations supporting the Democratic Party sued the Florida Secretary of State for declaratory and injunctive relief in a challenge to the order in which candidates were placed on Florida ballots. The most obvious distinction is that the hypothetical and conjectural nature of how ballot positions affect the political fortunes of the Democratic and Republican parties is simply not a concrete and demonstrable injury-in-fact.  The lack of injury-in-fact explains the decision in itself. Being barred by law from voting in a primary his taxes help fund is an actual and concrete harm by contrast. Plaintiff will not be allowed to vote. No uncertainty exists as to that fact.  The court's further conclusion

that even if there were an injury-in-fact, it was not traceable to or redressable by the Secretary of State is not necessary to explain the lack of standing in that case.

*Jacobson*'s dictum about the absence of traceability and redressability by the Secretary of State  do not apply here because the court gave as an independent reason for its decision the fact that no Supervisor of Elections was named a party. "The voters and organizations' failure to join the Supervisors as defendants is an independent reason that they lack standing to maintain this action." *Jacobsen* at 1253. The Plaintiff in this case, on the other hand, has sued and served the Sarasota Supervisor of Elections as well as the Florida Secretary of State.  To shore up its standing reasoning even further, the court in *Jacobson* invoked the political question doctrine to rule against the claim on the ground that no judicial standards existed a to determine a fair ballot position. *Id.*at 1241. The political question doctrine has no application to this case.

 Other decisions have recognized that assuming an injury-in-fact, both the Secretary of State and Supervisors of Elections may have traceable and redressable duties under the Florida Election Code. In a consolidated action to challenge Florida's election procedures the Northern District  held that certain injuries were fairly traceable to and redressable by both the Florida Secretary of State and Supervisors of Election. *Nielsen v. DeSantis*, 469 F.Supp.3d 1261, 1267 (N.D.Fla. 2020) ("An injury is traceable to a defendant if the defendant has a role in implementing or enforcing the provision that causes the injury. For most of the provisions at issue, this includes both the Secretary of State and the Supervisors of Elections."). *See also, e.g., Florida State Conference of the*

*NAACP v. Lee*, 566 F.Supp.3d 1262, 1263-64 (N.D.Fla.2021) (drop box restriction traceable to and redressable by Florida Secretary of State and Supervisors of Election) and *League of Women Voters of Florida, Inc. v. Lee*, 2022WL 969538 at 15 (N.D.Fla. 2022) (rejection of claim by Secretary of State that intentional injury-in-fact must be redressed by Supervisors of Election in each of Florida's 67 counties).

## II. PLAINTIFF HAS STATED A CLAIM ON WHICH RELIEF COULD BE GRANTED

### A. COMPELLED SPEECH AND ASSOCIATION

Defendant Boyd notes that Florida has had "closed primaries" since 1913 (Def. Amended Motion to Dismiss, p. 2). But another key background fact is that the First Amendment was not even applied to the states until *Gitlow v. New York*, 268 U.S. 652 (1927). Over the years the number of states with Florida's hard-core closed-primary system has decreased to only 11 states, including Florida. *World Population Review*, https : // www.worldpopulationreview .com/state-rankings/closed primary states. Click first hyperlink "Closed Primary States 2022" from dropdown (New Jersey, Delaware, Kansas Florida, Kentucky, Nevada, New Mexico, New York, Oregon, Pennsylvania, and Wyoming) (last visited July 16, 2022). Maine is also included in the *Word Population Review* study but Maine more recently abolished its closed-primary system. Starting in 2024, Maine will allow voters registered as unaffiliated to participate in party primaries while not allowing Democrats and Republicans to vote in the other party's primaries.

David Meyers, "Maine joins list of states with open primaries," *Fulcrum*, https:// www. thefulcrum.us/Elections/Voting/maine-open primaries (last visited July 16, 2022).

The growing tension between closed primaries and the Constitution has finally come to a breaking point  in *Janus v. AFSCME, 585 U.S.__ ,138 S.Ct. 2448 (2018).* In this landmark decision the Supreme Court overruled its prior decision and struck down an Illinois law requiring a non-union member to pay  agency fees to a union for collective bargaining services because the law violated the First Amendment by impermissibly compelling the non-union member's speech and association.  *See McDonald v. Longley*, 4 F. 4th 229 (5th Cir. 2021) (*Janus* holding extended beyond collective bargaining to integrated bar fees).

"Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Id.*at *2463*.  "Because the subsidization of private speech impinges First Amendment rights it cannot be casually allowed."*Id.*at 2464. Likewise, Plaintiff is being pressured to subsidize speech and support political associations when he refuses on principle to vote in party primaries by deceptively claiming a party membership which he shuns, but yet is required to support through his taxes.

Furthermore, just as the "free rider" justification was insufficient in *Janus,* any alleged Florida interest in preventing "raiding" of a party's primaries by political opponents is even more beside the point because Plaintiff's Complaint only asks that

voters registered with "No Political Party" be allowed to vote in primaries. Without reaching whether "strict scrutiny" applied, the Court struck down the Illinois law with the use of "exacting scrutiny" and rejected a rationality test for evaluating the state' interest. Not even the state's interest in labor peace, avoiding "free riders" and other concerns was sufficient to withstand this level of scrutiny. *Id.*at 2465.

### B. IMPOSITION OF AN UNCONSTITUTIONAL CONDITION ON VOTING.

In *Rutan v. Republican Party of Illinois*,497 U.S. 62, 72  (1990) the Supreme Court held that it violated the First Amendment rights of certain public employees for a governmental official to base promotions, transfers, and other employment decisions on affiliation with a political party or support for that party where no vital governmental interest was involved. The opinion noted that for at least a quarter century the Court has made it clear that even persons who have no right to a governmental benefit may not be denied that benefit  by infringing a constitutionally protected interest, such as freedom of speech. "For if the government could deny a benefit to person because of his constitutionally protected speech or association, his exercise of this freedom would in effect be penalized or inhibited.  This would allow the government to 'produce a result which (it) could not command directly. "Id.at72, *citing, Speiser v. Randall*, 357 U.S. 513, 526 [parallel citations omitted]." *Accord, Elrod v. Burns,* 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980) (dismissal for different political beliefs and associations)

The Florida closed primary places an unconstitutional condition on the right of Plaintiff  to exercise his First Amendment rights by offering him the benefit of voting in a

primary system, funded in part by him and some other 3 million Florida voters officially registered as not politically affiliated, if only he will forsake his political beliefs and rights of association by changing his registration from a person with "No Party Affiliation" to one with a party affiliation.

His choice is that between a constitutionally impermissible rock and hard place. It is the classic Catch-22. Either sacrifice your refusal to support the party system and betray your political beliefs by outward deception in changing your public voting registration, or else forfeit your fundamental right to vote in a primary and have an equal voice with partisan voters who will otherwise determine the ultimate candidates and leave you with a greatly diminished choice in the general election.

Neither Defendant has denied the allegations of Plaintiff's Second Claim for Relief that the right to vote in a primary election and the right to vote in a general election have become essentially part of an integrated and unified electoral system in Florida. The conditioning of his right to vote in a primary is, therefore, like conditioning his right to vote in a general election. This is especially so since the vote in a primary is crucial to determining who the candidates will be in a general election. At the very least, Plaintiff submits this is not an issue to be determined at this premature point in the case. The burden is on the State of Florida to prove it has vital interests that survive, at the very least, the "exacting scrutiny" established by the Supreme Court.

C. PLAINTIFF'S POSITION IS CONSISENT WITH SUPREME COURT OPINIONS BALANCING RIGHTS OF POLITICAL PARTIES AND FIRST AMENDMENT RIGHTS OF VOTERS.

Plaintiff's Complaint is not barred as a matter of law by the Supreme Court decisions, cited by Defendants, of *California Democratic Party v. Jones*, 530 U.S.567 (2000) and *Clingman v. Beaver, 544 U.S. 581 (2005)*.  Plaintiff does not ask in the Complaint for a specific type of replacement for the Florida closed-primary and would prefer to leave that to the Florida legislature. All plaintiff contends is that the current version of the Florida close-primary is unconstitutional. The following case discussion indicated how the Plaintiff's First Amendment rights can be compatible with the First Amendment rights of political parties.

In California *Democratic Party, 530 U.S. 567,581 (2000)* the Supreme Court struck down Proposition 198 as a violation of the associational rights of political parties. California's had changed from closed primaries to "blanket" primaries. The Court explained that in "blanket" primaries each voter's ballot lists every candidate regardless of party affiliation and permits voters to choose freely among them. The one with the most votes became the party's nominee in the general election. The "blanket" primary was unconstitutional only because it eviscerated the First Amendment right of a party to pick its own nominees. The decision did not condemn other forms of "open" primaries which allow political parties to determine their own nominees before opening a primary to all voters.

15

In fact, the Supreme Court in *Washington State Grange v. Washington State Republican Party, 557 U.S. 442 (2008)* upheld as constitutional a "modified blanket" primary which avoided the fatal flaw of having all voters decide a party's nominee. "Whether parties nominate their own candidates outside the state-run primary is simply irrelevant. In fact parties may now nominate candidates by whatever mechanism they choose because I-872 repealed Washington's prior regulations governing party nominations." *Id.* at 453. The Court said it was "sheer speculation" that voters would think candidates running in a primary with party identification were the nominees of the party. *Id.* at 454.

Furthermore, the Supreme Court in *Clingman v. Beaver*, 544 U.S. 581, 587 (2005), has endorsed Oklahoma's semi-closed primary system in which a political party may allow voters registered as Independent to vote in its primary but not voters affiliated with another political party. The Libertarian Party objected on the basis that it wished to allow all voters, even those from other parties, to vote in its primaries. The court rejected the attack on Oklahoma's semi-closed system with these words:

In *Tashjian,* this Court struck down, as inconsistent with the First Amendment, a closed primary system that prevented a political party from inviting Independent voters to vote in the party's primary. 479 U.S., at 225, 107 S.Ct. 544. This case presents a question that *Tashjian* left open: whether a State may prevent a political party from inviting registered voters of other parties to vote in its primary. *Id.,* at 224, n. 13, 107 S.Ct. 544. As *Tashjian* acknowledged, opening a party's primary "to all voters, including members of other parties, ... raise[s] a different combination of considerations." *Ibid.* We are persuaded that any burden Oklahoma's semiclosed primary imposes is minor and justified by legitimate state interests.

Far from dooming Plaintiff's Complaint at the outset, these cases actually provide a constitutional blueprint for the replacement of the Florida closed primary system. If anything, *Tashjian v. Republican Party of Connecticut*, 479 U.S.208 (1986) provides another reason why 101.021, Fla. Stat. (2021) is unconstitutional. That statutory provision flatly makes it unlawful for any voter to cast a ballot in any primary other than the primary of the party with which the voter is registered. Contrary to the holding of *Tashjian*, a political party in Florida would not be allowed to open up its primary to voters not affiliated with a party even if the political party wanted to.

### D. PLAINTIFF AND OTHER VOTERS REGISTERED WITH "NO PARTY AFFILIATION" ARE TREATED DIFFERENTLY FROM OTHER QUALIFIED VOTERS WITH WHOM THEY ARE SIMILARLY SITUATED IN EVERYTHING BUT THE   DISCRIMINATION BECAUSE OF THEIR  POLITICS.

Defendant Turner's denial of any equal-protection problem occurs because he assumes all Florida voters are treated the same. "In general, Plaintiff has the same rights as every other Florida voter. If he registers with a party, he may vote in its primary. 101.021. Plaintiff does not allege otherwise (Def. Turner's Motion to Dismiss, p.8*.)."* But that observation …"If he registers with a party" …misses the central issue of this case. Plaintiff acknowledges he could vote in a primary but that is not the real issue.

The issue is whether a state can require a taxpayer and independent voter to vote in party primary in order to be placed on an equal basis with other voters. Not-politically-affiliated voters are similarly situated to party voters in that they are all voters but yet are

invidiously discriminated against because of the denial of the right to vote in a government-funded and government-supervised primary system that operates only for the benefit of those who choose to associate with those parties and express adherence to them. See, e.g., the original voter-apportionment case of *Baker v. Carr*, 369 U.S. 186, 207 (1962) ("These appellants seek relief in order to protect or vindicate an interest of their own and of those similarly situated."). Plaintiff and the other Florida independents who have officially registered as voters with "No Party Affiliation" are similarly situated to other qualified voters but they are otherwise handicapped and inhibited in the full exercise of their constitutional rights.

*Griffin Indus, Inc. v. Irvin,* 496 F.3d 1189, 1207 (11th Cir. 2007) is not relevant to Plaintiff's case because that case involved a chicken processor claiming a "class of one" for being subjected to more rigorous environmental enforcement than his competitors. *The Griffin* court noted that the plaintiff in that case failed to meet the second prong of a "class of one" claim because the enforcement was "rational." Plaintiff in the base before this court is not a "class of one" but part of the three- million- plus voters whose votes are suppressed in Florida primaries.  Moreover, Plaintiff is making a claim based on the First Amendment which requires a strict, exacting, or heightened scrutiny and not merely some rational justification.

## III. PLAINTIFF HAS COMPLIED WITH F.R. CIV.P. 5.1(a) (2) BY NOTIFIYING STATE ATTORNEY GENERAL AS REQUIRED.

In compliance with F.R.CIV.P. 5.1(a) (2), Plaintiff, on July 14, 2022, deposited an envelope by certified mail in the U.S. Post Office at 1661 Ringley Boulevard in Sarasota, Florida, 34236, on or about 1:30 p.m. ,with the same addressed to the Office of the Florida Attorney General, PL-01 The Capitol, Tallahassee, Florida, 32399-1050 and containing the notice of constitutional questions raised by Plaintiff as to the state statute and state constitutional provision referred to in Plaintiff's Complaint, as well as copy of the Complaint. Sixty days after this notice is filed, or after this Court sets a later time, whichever is earlier, the Attorney General may intervene. *Id.*at (c).   "A party's failure to file and serve the notice, or the court's failure to certify, does not forfeit a constitutional claim or other defense that is otherwise timely asserted." *Id*, at (d).

WHEREFORE, the Plaintiff requests this Court to deny the Amended Motion to Dismiss of Defendant Cord Boyd, Florida Secretary of State and to deny the Motion to Dismiss of Ron Turner, Supervisor of Elections for Sarasota County.

Respectfully submitted,

_____

MICHAEL J. POLELLE
PLAINTIFF PRO SE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all

counsel of record by mailing a copy to Ashley E. Davis, Deputy General Counsel of the

Florida Department of State, R.A. Gray Building, Suite 100, 500 South Bronough Street,

Tallahassee, Florida 32399-0230 and emailing a copy to her email address at

Ashley.Davis@dos.myflorida.com and by mailing a copy to Ashley E. Gaillard, Esq.,

Bentley Goodrich Kison, 783 S. Orange Avenue, Suite 300, Sarasota, Florida, 34236 and

by emailing a copy to her email address at agaillard@bgk.law

_____

MICHAEL J. POLELLE

PLAINTIFF PRO SE

1102 Ben Franklin Drive

Unit 511

Sarasota, Florida  34236

Tel: (941) 388-1840

.